# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| GALEN FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:11-cv-1424-WTL-DKL |
| | ) | |
| CRAIG HANKS, | ) | |
| | ) | |
| Defendant. | ) | |

## Entry Discussing Motion for Summary Judgment

Galen Freeman, a former inmate at the Pendleton Correctional Facility ("Pendleton"), brings this action pursuant to 42 U.S.C. § 1983 against the Superintendent of Pendleton.[1] Freeman alleges that the policy of not allowing prisoners in disciplinary segregation to order food from the commissary violated his constitutional rights. The defendant moves for summary judgment. Freeman has not responded.

## Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

---

[1] Because this action involves a policy at Pendleton, it is brought against the Superintendent in his official capacity. The current Pendleton Superintendent, Craig Hanks, is therefore substituted as the proper defendant

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in his favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). *See Fed.R.Civ.P.* 56(c)(1)(A),(B)(both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). However, "before a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v.Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

Freeman has not opposed the motion for summary judgment. The consequence of this is that he has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## Facts

The following statement of facts has been evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Freeman as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Pendleton maintains a prison commissary through which offenders are permitted to obtain authorized items. Freeman was incarcerated in disciplinary segregation at Pendleton from June 15, 2011, until September 22, 2011. Offenders in disciplinary segregation are limited in the items they may possess due to the special security concerns involved. According to Indiana Department of Correction ("DOC") policy, each offender in disciplinary segregation may have limited access to the commissary to order personal hygiene items and over-the-counter medicine. DOC policy leaves it to the facility's operational procedures to specify which commissary items are to be made available to the offender. Pursuant to Pendleton's policies, Offenders assigned to the Disciplinary Segregation Unit may submit a commissary order on a bi-weekly basis, providing they are not on commissary restriction. Offenders in disciplinary segregation are allowed to order from a commissary using a restricted form which contains hygienic items, over-the-counter medication, and certain miscellaneous office supplies, but does not permit offenders in disciplinary segregation to order food items.

Offenders within disciplinary segregation at Pendleton received the same meal provided to the general population. All offenders in disciplinary segregation are offered a tray each meal. Food services for Pendleton are contracted out to Aramark Correctional Services ("Aramark"). The food from the Reduced Sodium Adult Male Master Menu is offered at Pendleton pursuant to Aramark's contract with the DOC. This menu is first approved by a dietician employed by Aramark and then submitted to the Executive Director Contract Compliance of DOC for approval, before the proposed meals are served to prisoners. This menu meets the nutritional guidelines of the American Correctional Association for males and females, 19 to 50 years of age, as established by the Food and Nutrition Board of the Institute of Medicine, National Academy of Sciences. This menu includes a daily range of 2500 to 2800+ calories and includes adequate levels of vitamin A, vitamin C, calcium, and iron. The meals offered at Pendleton meet caloric requirements for offenders as required by DOC pursuant to Aramark's contract.

## Discussion

Freeman alleges that Pendleton's policy of prohibiting offenders housed in disciplinary segregation from ordering food from the commissary violates the Eighth Amendment's prohibition on cruel and unusual punishment and the Equal Protection Clause of the Fourteenth Amendment.

### *Eighth Amendment*

First, Freeman alleges that this policy violates the Eighth Amendment prohibition against cruel and unusual punishment because the normal prison food served to offenders does not meet their nutritional needs.

"The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification." *Meriwether v. Faulkner,* 821 F.2d 408, 415 (7th Cir.1987). In evaluating Eighth Amendment claims, courts conduct both an objective and a subjective inquiry. "The objective prong asks whether the alleged deprivation or condition of confinement is 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). If the conditions complained of pass this threshold, courts then ask whether the defendant "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 834).

A prison does not violate the Eighth Amendment when it provides balanced meals in compliance with nutritional guidelines set by a dietician. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994). Here, it is undisputed that offenders within Disciplinary Segregation at Pendleton received the same meal provided to the general population. The meals served at Pendleton come from the Adult Male Master Menu, which is approved by a dietician and meets the guidelines of the American Correctional Association. These meals have a daily range of 2500 to 2800+ calories and include adequate levels of vitamin A, vitamin C, and iron. The meals offered to Freeman while he was in disciplinary segregation at Pendleton contain sufficient nutritional value. No more is required. The restriction on ordering food from the commissary does not result "in the denial of the minimal civilized measure of life's necessities." Therefore, the prohibition against purchasing food from the commissary did not violate his Eighth Amendment rights and the defendant's motion for summary judgment is **granted** as to Freeman's Eighth Amendment claim.

### *Fourteenth Amendment*

Freeman also asserts that the policy of prohibiting prisoners in disciplinary segregation from ordering food from the commissary but allowing other prisoners to order food violates the Equal Protection Clause of the Fourteenth Amendment.

An equal protection claim must be based on "intentional discrimination against [the plaintiff] because of his membership in a particular class, not merely [because] he was treated unfairly as an individual." *Smith v. Town of Eaton, Ind.*, 910 F.2d 1469, 1472-73 (7th Cir. 1990) (citing *Huebschen v. Department of Health and Social Servs.,* 716 F.2d 1167, 1171 (7th Cir. 1983); *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir. 1989)). Equal protection claims that do not involve a fundamental right or a protected class are reviewed under a deferential rational basis test. *See Martin v. Shawano-Gresham School District*, 295 F.3d 701, 712 (7th Cir. 2002). Freeman does not allege that he is a member of a protected class. Nor does he raise some other reason his treatment deserves more than rational basis review. Under rational

basis, disparate treatment is justified if it is rationally related to a legitimate penal interest. *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988). A prison has a legitimate penal interest in the maintaining of order and security in the facility. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979).

Pendleton maintains a prison commissary through which offenders are permitted to obtain authorized items. Pursuant to Pendleton's policy, offenders in disciplinary segregation are only allowed to order from a restricted form, which contains hygienic items, over-the-counter medication, and certain miscellaneous office supplies. Offenders in disciplinary segregation are limited in the items they may possess due to the special security concerns involved with offenders placed in disciplinary segregation. Freeman has presented no evidence that security concerns do not provide a rational basis for Pendleton's policy. Accordingly, the defendant's motion for summary judgment on Freeman's equal protection claim is **granted**.

## Conclusion

The defendant's motion for summary judgment [18] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  01/24/2013

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Galen Freeman
DOC #184328
Wabash Valley Correctional Facility
6908 S. Old U.S. Highway 41
P.O. Box 1111
Carlisle, IN 47838-1111

Electronically Registered Counsel